MARSHALL, Respondent, vs. TAX COMMISSION and another, Appellants.

*June 4—June 22, 1936.*

For the appellants there was a brief by the *Attorney General* and *Herbert H. Naujoks,* assistant attorney general, and oral argument by *Mr. Naujoks.*

For the respondent there was a brief by *Benton, Bosser, Becker & Parnell* of Appleton, and oral argument by *Alfred C. Bosser.*

MARTIN, J.    The material facts which are controlling on this appeal are not in dispute.    During the summer and early fall of 1931, the Citizens National Bank experienced serious

financial difficulties. On September 29th of that year, the national bank examiner ordered it to take steps to get under the wing of the First National Bank of Appleton. Negotiations immediately followed, resulting in an interbank agreement dated October 24, 1931. Under that agreement, the First National Bank assumed the liabilities of the Citizens National Bank as of the close of business on October 24, 1931, other than its liabilities to its stockholders as such, and in accordance with the agreement, the Citizens National Bank agreed to "sell, convey, transfer, set over and deliver" to the First National Bank all of its assets. The Citizens National Bank also gave its demand note for $250,000 to the First National Bank as stipulated in the agreement, and the directors of the Citizens National Bank gave their demand notes for their individual liability as stockholders. The Citizens National Bank ceased to do business at the close of the banking day of October 24, 1931.

The preamble to the interbank agreement recites in part:

"That, whereas, in the opinion of the board of directors of first party [Citizens National Bank], it is not only undesirable, but would be unprofitable for said bank to further continue its operations as a going concern, and it is further for the best interests of said first party and of all those interested therein as stockholders or otherwise, that said bank should go into liquidation and have its affairs wound up in the manner provided by law," etc.

The agreement further provides:

"The proceeds of the liquidation of all of the assets, including the net cash proceeds thereof, shall be used and applied in the following order:

"First: To repay and reimburse the second party [First National Bank] in full for all liabilities assumed or paid by second party hereunder.

"Second: To reimburse second party for all taxes and other fixed charges and expenses of liquidation, including reasonable attorney's fees.

"Third: After all such liabilities assumed are paid by the second party and interest thereon having been paid in full, the second party shall turn over any surplus assets or the proceeds of any surplus assets then remaining in its hands to the first party."

The proceeding, on the part of the Citizens National Bank, is a voluntary liquidation of the bank under secs. 5220 and 5221, United States Revised Stats.

It appears that after the expiration of the interbank agreement, which was on April 24, 1933, a receiver was appointed to liquidate the remaining assets, and on July 29th of that year the double liability assessment was levied against the stockholders of the Citizens National Bank. Respondent paid the assessment on his stock and has received credit for that loss. The only issue made at the hearing before the income tax board of review on July 31, 1933, was with reference to the value of the respondent's stock in the Citizens National Bank after it had suspended its business and had turned over its assets to the First National Bank under the interbank agreement.

It was contended by the respondent that his stock had become worthless in the year 1931. On the other hand, it was contended by the assessor of incomes that the stock had some value, and, further, that until the assets of the Citizens National Bank had been liquidated, the respondent was not entitled to a deduction for his alleged loss on his income for the year 1931, since there had been no final distribution of the assets of the Citizens National Bank.

From the evidence and conceded facts, it seems very probable that the respondent's stock did become worthless during the year 1931, but in view of the fact that subsequent to October 24, 1931, and thereafter during the years 1932 and 1933, the assets of the bank were in process of liquidation, the question here for consideration is whether the taxpayer

was entitled to a credit for the claimed loss on his 1931 income; it being conceded that the assets of the bank were in process of liquidation and that no final distribution had been made.

Sub. (2) (b) 3 of sec. 71.02, Stats. 1931, provides:

"Amounts distributed in liquidation of a corporation shall be treated as payment in exchange for the stock, and the gain or loss to the distributee resulting from such exchange shall be determined under the provisions of this paragraph and section 71.02 (2) (d). No amounts received in liquidation shall be taxed as a gain until the distributee shall have received amounts in liquidation in excess of his cost or other income tax basis provided in section 71.02 (2) (d), and any such excess shall be taxed as gain in the year in which received. *Losses upon liquidation shall be recognized only in the year in which the corporation shall have made its final distribution.* For the purposes of this paragraph a corporation shall be considered to be liquidating when it begins to dispose of the assets with which it carried on the business for which it was organized and begins to distribute the proceeds from the disposition of such assets, or the assets themselves, whether or not such disposition and distribution is made pursuant to resolution for dissolution; provided, that any distribution of current earnings of a corporation shall not be considered to be a distribution in liquidation unless the corporation making such distribution has ceased or is about to cease carrying on the business for which it was organized."

It appearing that the liquidation proceedings were in progress at the time of the hearing before the county board of review, and no final distribution of the assets having been made, it is clear from the plain language of the statute above quoted, that the respondent could not take his claimed loss on his income in the year 1931. Where a corporation is in the process of liquidation, the statute above quoted provides the test to be applied before the stockholder's claimed loss can be successfully asserted. Whether the statutory provision may

produce a harsh result in a given case, or whether it was wise to fix a definite time when such losses would be recognized, was a matter for the consideration of the legislature which enacted the statute.

In reversing the decision of the Wisconsin Tax Commission, the trial court, in part, said:

"The income tax law is concerned only with realized losses as with realized gains. Exception is made, however, in case of losses which are reasonably certain in fact and ascertainable in amount as to justify their deduction under certain circumstances before they are absolutely realized. No definite legal test is provided for by statute under the federal law. The general requirement that loss be deducted in the year in which they are sustained calls for a practical, not a legal test, under the federal law. *Lucas v. American Code Co.* 280 U. S. 445, 50 Sup. Ct. 202, 74 L. Ed. 538. The worthlessness of said stock under the federal statute may be shown by circumstances. *Royal Baking Co. v. Comm. of Int. Rev.* (C. C. A.) 22 Fed. (2d) 536; *U. S. v. White Dental Manufacturing Co. of Penn.* 274 U. S. 398, 47 Sup. Ct. 598, 71 L. Ed. 1120."

The trial court further said:

"The stock in question held by Dr. Marshall was stock issued by a national bank under and by virtue of the acts of congress and the laws of congress provide for a method of handling the liquidation of banks organized under the laws of the United States. . . . The time for losses upon liquidation in the year in which the corporation shall have made its final distribution is too indefinite and uncertain, and as far as national banks are concerned, the federal government does not follow that rule; it permits a value to be fixed and the loss to be determined before final distribution of insolvent corporations, and that rule still applies to banks, although the bank maintains its legal existence for the purpose of liquidation only, but are prohibited from doing any banking business."

The fact that respondent's claimed loss resulted from an investment in national bank stock has no significance as to

any legal question involved on this appeal. The source from which the loss may occur is wholly immaterial. The respondent is asserting the alleged loss as an offset or refund on his 1931 income under the state income tax law. It being conceded that no final distribution of the assets of the liquidating corporation has been made, the judgment must be reversed.

*By the Court.*—Judgment reversed. Record remanded, with directions to enter judgment affirming the assessment.